LE GUEN *v.* GOUVERNEUR *v.* KEMBLE, 1 J. C. 436–524.

*Relief in Chancery after Trial and Judgment at Law; Judgment or Decree as to what is Binding between the Parties; Appeal from Order granting Feigned Issue; Costs on Appeal on Reversal of Decree.*

THE respondents, Gouverneur and Kemble, as factors of the appellant, Le Guen, on the 13th of April, 1795, at New York, sold to Lopez and Rivera, about 600 bales of cotton, and 12,000 pounds of indigo of the isle of France, amounting to $122,415 in the whole; for which the purchasers gave their promissory notes, payable in one year, with interest after 60 days. A written contract by direction of the appellant, was entered into between the respondents and the purchasers; and among other conditions of the contract, it was stipulated that the proceeds of the articles in France, or elsewhere, should be first applied to the payment of the purchase money; and further that the respondents "might have it in their option to receive the whole or a part of the amount of the said notes, at Havre de Grace, or at any other port, the ship carrying the property for the purchasers, might discharge at in Europe."

A few days after, the goods were shipped on board and the vessel sailed for Havre de Grace, in France, where she arrived about the first of July, 1795; from thence, by direction of Gomez, who was on board, she sailed to Hamburgh, and there landed the goods, which were afterward reshipped to London and there sold.

The appellant made repeated applications to the respondents or their agents, to make election to receive the purchase money out of the proceeds of the articles in Europe, to give an authority by which the appellant might receive the surplus thereof, after the respondents had retained a sufficient sum to indemnify them for all their advances and responsibilities on account of the appellant. The respondents, declining to follow this direction, and to make the election, the appellant considered them as having thereby substituted themselves in the place of the purchasers, and become liable for the purchase money, and thereupon brought an action at

law in the Supreme Court of this state, and obtained a final judgment against the respondents for the amount, and the judgment was affirmed in the Court of Errors.*

Before the trial at law, two of the purchasers, (the other refusing to join,) on the 11th of October, 1796, filed a bill in Chancery against the appellant, the respondents, and Lopez the other purchaser, praying relief on the ground of fraud in the sale; alleging that the appellant had represented the cotton as of the growth of the Isle of France, whereas it was in truth of the growth of Surat, and the indigo, as of two descriptions, flotary and violet copper, when a small part only was of one of those descriptions, and the remainder of different kinds, and that the appellant had produced samples agreeing with his representation; that the articles proved to be of inferior quality to those for which they were sold, and brought in London $20,000 less than they would have done had they been of the description and quality represented.

The appellant in his answer, denied fully and positively all the allegations of the complainants, on which the charge of fraud was founded. On the 9th of May following, the respondents put in their answer to the bill, declaring that they did not know that the appellant had practised any fraud or misrepresentation in the sale, and on the 20th of June following, Lopez, the other purchaser, put in his answer, which agreed in substance with that of the appellant, and exculpated him from all the allegations of fraud or misrepresentation.

A few days after the affirmance of the judgment in the

---

* There does not appear to be anything essential to the right understanding of this case, as presented to the court on appeal from the Chancellor, contained in the report of the case, in the Supreme Court or the Court of Errors, which is given in a note to this case; 1 J. C. 437–491. Both courts held that " the election reserved to G. and K., by the contract with Lopez and Rivera, must be considered for the benefit of Le Guen, the respondents having been made factors for the benefit of the appellant, and this stipulation being incident to the trust confided to them; G. and K., could not avoid a compliance with the instruction of Le Guen, as to the exercise of the right of election, without violating their duty."

" That the proper rule of damages in such a case, is the amount of the sales to Lopez and Rivera, deducting the amount of the demand due to G. and K. from Le Guen."

Supreme Court, to wit, on the 20th of March, 1798, the respondents filed a bill, also, in the Court of Chancery, against the appellant, stating the sale of the cotton and indigo, the suit brought by Gomez and Rivera in Chancery, and that they had obtained an injunction on the ground of fraud, on the part of the appellant, and that the suit remained undetermined ; and praying that the appellant might be enjoined, from suing out execution on the judgment against them, in the Supreme Court, as it would be unjust to permit him to receive money, until it was ascertained whether he had been guilty of the fraud alleged by the purchasers. The bill concluded with praying an injunction and relief, and an injunction issued accordingly. On the 7th of June, 1798, the appellant put in his answer to the bill of the respondents, in which he set forth the bill filed by Gomez and Rivera, and his answer to that bill, in which he explicitly denied every allegation of fraud.

To prevent any risk or inconvenience to the appellant, the Chancellor ordered the respondents to pay the amount of the judgment into the Bank of New York ; and the plaintiff was permitted to draw out, unconditionally, about $53,000 ; the residue was received by him on giving security to refund, in case it should become necessary by the decree of the court.

After publication had passed, the Chancellor on the 1st of March, 1799, directed an issue to be tried in the Supreme Court. The question was reserved " whether the respondents were precluded by the antecedent circumstances, from insisting on the alleged fraud as a ground of relief ?" The Chancellor held that they were not precluded, and confirmed the order for the trial of the issue. From this order the present appeal was brought to the Court of Errors.

Three questions were raised. 1. Whether inasmuch as, *previous to the trial at law* between the appellant and respondents, they had full notice of the pretended fraud, by the bill exhibited by Gomez and Rivera, they were not bound if they meant to avail themselves of that defence, to avail themselves of it at that trial, and consequently, whether they were not precluded from urging it to impeach the judgment against them ?

2. If not precluded, whether from the nature of the testi-

11

mony in the cause, it was proper that there should be an issue to be tried by the jury?

3. Whether this court, being regularly in possession of the cause, with all the evidence, will not decide the whole controversy between the parties?.

Radcliff, J., delivered an opinion on the first point, maintaining that the judgment of the appellant in the Supreme Court against the respondents, did preclude the latter from maintaining this suit, and that the court ought to make a final decree, and that the bill ought to be dismissed. With this opinion Kent, J., Benson, J. and Lansing, Ch. J., concurred. Kent, J., delivered an opinion, in which as to the first point, he says:—

"The suit at law of the appellant against the respondents was a special action on the case, for a breach of their duty as factors in refusing to elect to receive the amount of the notes in Europe, and to give the appellant the requisite authority for that purpose. In consequence of this default, the respondents became, in respect to the extent of the remedy, substituted in the place of Gomez and Co., and responsible. (to the appellant) for the amount of the property. The breach of duty reached to the whole property, and the principal had a right to abandon it to them, and to regard them as appropriating the whole to their own use. This was the amount of the decision in the suit at law.

"Placed in the situation of Gomez, Lopez, and Rivera, and subject to their burthens, the respondents took, of course, their advantages, and succeeded to the same means of defence. This is an universal principle of law and justice.

"The respondents were, accordingly, competent to set up as a defence in the suit at law, the fraud alleged in the present action, and there was nothing in the form of the action which precluded them from doing it. The respondents were sufficiently apprised of the allegation of fraud, and that it was contemplated by Gomez and Rivera, as a defence against the notes. They were informed of this by the bill previously exhibited by Gomez and Rivera, in the court below. All the testimony now produced, was, for anything that appears to the contrary, equally within their power then as now, and yet no effort was made to produce it. They have chosen to

abide by one species of defence and to waive another, and like other litigants in similar cases, they must be concluded by their election."

He considers the other two questions; but as the second point is chiefly a review of the evidence in the cause, it is sufficient to state that he agreed that the " cause ought to have been decided in the court below, without the useless delay and expense of a trial at law."

Thirdly, he considers the question, " Having the merits before us, shall we not decide finally between the parties ?"

" I can not bring my mind to doubt the authority of this court." He cites a number of authorities from P. Wms. and Bro. P. C., to prove that this is the " established rule of the House of Lords, in England, upon appeal"—" to give such a decree as the court below ought to have given."

Lewis, J., dissented.

The decree was accordingly, that the order of the Chancellor appealed from should be *reversed*, and the bill of the complainants dismissed.

Costs and damages to be assessed against the respondents, having been moved for on the part of the appellant, the court took time to consider, and after argument and advisement, decided :

1. That if judgment be given in the court below against the plaintiff, and he bring error, and the judgment of the court below be *reversed*, he recovers only the costs of the suit below ; because the court of review gives such judgment as the court below ought to have given, and no other, and it would be unreasonable to compel a party in case of reversal to pay costs for the error of the court below.

2. If the plaintiff below recover, and the defendant below bring error and *reverse* the judgment, he obtains no costs, unless it be the costs of the court below, up to the judgment.

The decree as to costs, therefore, was that " the respondents should pay to the appellant the costs only of the proceedings in the court below, up to the time that the order for an issue was made absolute, and that each party pay his own costs on the appeal."